IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

RAFI WALI MCCALL,                                §
Institutional ID No. 75238                       §
SID ID No. 83073-080,                            §
                                                 §
            Plaintiff,                           §
                                                 §
v.                                               §    Civil Action No. 1:21-CV-00199-BU
                                                 §
LASALLE CORRECTIONS, *et al.*,                   §
                                                 §
            Defendants.                          §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff RAFI WALI MCCALL, a prisoner with the Federal Bureau of Prisons, filed this civil action on November 4, 2021, complaining that his constitutional rights were violated through negligence, fraud, manipulation, and cruel and unusual punishment during his time as a pretrial detainee at the Rolling Plains Detention Center. Dkt. No. 1 at 3. The Court granted McCall leave to proceed *in forma pauperis*, which subjects his Complaint to the Court's preliminary judicial screening measures under 28 U.S.C. § 1915(e)(2). Dkt. No. 10. And because McCall is an inmate suing a government entity, officer, or employee, his Complaint is also subject to screening under 28 U.S.C. § 1915A.

Under 28 U.S.C. § 636(b) and an order of transfer, this civil action was transferred to the undersigned United States magistrate judge. Dkt. No. 11. The Court ordered McCall to complete two screening questionnaires to supplement the factual development of his claims, which he did. Dkt. Nos. 14, 31.

1

After careful consideration of the claims in McCall's Complaint and the supplements to those claims through his responses to the Court's questionnaires, the undersigned RECOMMENDS that McCall's claims be dismissed.

## I.    BACKGROUND

In his Complaint, McCall alleges that while at Rolling Plains he was subject to multiple acts of negligence, fraud, manipulation, and cruel and unusual punishment. *See* Dkt. No. 1. However, McCall's claims center around his loss of expensive eyeglasses. *See id.*

McCall's allegations stem from his fight with another inmate in January 2021. Dkt. No. 1 at 4. After this incident, McCall and the other inmate were sent to the Special Housing Unit (SHU). McCall does not complain about the fight or his placement in the SHU. Instead, he claims that Officer FNU Delarosa packed his property to be sent to SHU, but "when she placed my glasses (expensive Cartier's well known by staff and U.S. Marshals alike) on the table she turned her back and inmate Martinez (not known until the video was reviewed) stole them off the table." *Id.* McCall states that the staff at Rolling Plains attempted to locate his glasses but were unable to find them. *Id.* He further alleges that Delarosa was negligent or grossly negligent due to her role in the theft of McCall's glasses.[1] *Id.*

The next morning, McCall went to the Captain FNU Reynold's[2] office where he "reviewed the video and noticed inmate Martinez taking the glasses from the table and

---

[1] McCall's sole claim against DeLarosa is for negligence regarding her handling of his eyeglasses.

[2] Through the questionnaire completed by McCall, the undersigned was able to identify FNU LNU #1 as FNU Reynolds. **The Clerk is directed to conform the docket to reflect that FNU LNU #1 is FNU Reynolds.**

2

destroying them by dropping them down the mop drain." Dkt. No. 1 at 5. McCall alleges that Captain Reynolds spoke with Warden Judith Bennett and Major FNU Tucker[3] about the eyeglasses and that "they agreed to compensate me for my loss." *Id.* McCall was then escorted to Medical Supervisor FNU Shaginaw who started the process of finding replacement eyeglasses. *Id.* Shaginaw also told McCall that Rolling Plains would "dock inmate Martinez's account for the cost[.]" *Id.* McCall claims that although inmate Martinez "was sent to the SHU and his account was being docked for $800 plus," McCall still did not receive his replacement glasses and never heard from Shaginaw again. *Id.*

In response to the Court's questionnaire, McCall expands upon his allegations; he explains that while Shaginaw attempted to obtain replacement eyeglasses, she ultimately failed to do so and stopped responding to his inquiries. Dkt. No. 14 at 3. McCall complains that without his glasses he suffered "strained vision causing headaches, anxiety, depression," and he also maintains that the situation caused him a "feeling of loss" and "trust issues with people acting under color of law." *Id.* at 8. Additionally, McCall maintains that the lack of glasses amounts to cruel and unusual punishment because he was "forced to trial without my glasses" and could not properly participate during his trial. *Id.*

Through the Court's questionnaire, McCall asserts that the Defendants were involved in an alleged "conspiracy" to deprive him of his eyeglasses. *See* Dkt. No. 14. He also claims that he: (1) was possibly exposed to Hepatitis C during the fight with the other

---

[3]Through the questionnaire completed by McCall, the undersigned was able to identify FNU LNU #2 as FNU **Tucker. The Clerk is directed to conform the docket to reflect that FNU LNU #2 is FNU Tucker.**

inmate but was denied a test for the infection, *id.* at 3; (2) was housed with white suprem-acist inmates, although he was not harmed, *id.* at 4; (3) suffered retaliation for calling out racial prejudice by staff, *id.* at 5; and (4) was falsely charged and convicted for not cleaning off the top bunk to make room for a new inmate, *id.* at 5, 7.

McCall sues LaSalle Corrections, which operates Rolling Plains, and five of its em-ployees: (1) Shaginaw; (2) Bennett; (3) Reynolds; (4) Tucker; and (5) Delarosa. Dkt. No. 1 at 3. He seeks monetary damages in the amount of $6.5 million. *Id.* at 4; Dkt. No. 22.

## II.    PRELIMINARY SCREENING

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines the complaint is frivolous or mali-cious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2016); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental enti-ties, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v.*

*Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified and authenticated" (internal quotations omitted)).

Dismissal for failure to state a claim—whether under Section 1915(e)(2)(B)(ii), Section 1915A(b)(1), or Rule 12(b)(6)—"turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept *well-pleaded* factual allegations as true. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*,

634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plain-tiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at \*8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at \*1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experi-ence and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

6

## III.    DISCUSSION AND ANALYSIS

Although McCall initiated this lawsuit through the filing of a complaint under 42 U.S.C. § 1983, because he was a federal pretrial detainee at the time his claims arose, the undersigned also considers whether he can state a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*. 403 U.S. 388 (1971) (recognizing an implied cause of action for money damages against federal officers for deprivation of certain constitutional rights). The undersigned begins with § 1983.

### A.  *McCall is unable to bring a §1983 claim against the individual defendants.*

Section 1983 authorizes private parties to enforce their federal constitutional rights, and some federal statutory rights, against those who act under color of state law, including state and local officials, and municipalities. *See* 42 U.S.C. § 1983; *see also Monell v. Department of Social Services*, 436 U.S. 658 (1978) (holding that municipal entities, including counties, can be liable under § 1983 when a policy, practice, or procedure of the entity is the moving force behind a violation of federally protected rights). To establish a prima facie case under § 1983, a plaintiff must establish "that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

7

McCall does not claim that any of the defendants were state actors as required under § 1983. He acknowledges that each individual defendant was an employee of LaSalle Corrections. Notably, LaSalle Corrections is a private corporation.[4] It is well settled that private corporations who have contracted with the federal government to detain federal prisoners do not act under color of state law, and neither do their employees. *See Sandoval v. Wackenhut Corr. Corp.*, 21 F.3d 1109, 1994 WL 171703, at *2 n.3 (5th Cir. 1994) ("Because Sandoval was a federal prisoner in the facility, which Wackenhut was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved.") (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)); *see also Eltayib v. Cornell Cos., Inc.*, 533 F. App'x 414, 414–15 (5th Cir. 2013) (per curiam) ("Cornell, GEO, and their employees are not subject to suit as state actors under § 1983. BSCC is a federal prison and § 1983 applies to constitutional violations by state, rather than federal, officials.") (internal citation and quotation marks omitted).

Here, because the challenged conduct did not occur under color of state law, McCall cannot establish an essential element of a § 1983 claim. Thus, the Court should dismiss McCall's § 1983 claims against Shaginaw, Bennett, Reynolds, Tucker, and Delarosa as legally frivolous and for failure to state a claim upon which relief may be granted.

---

[4] LaSalle Corrections West, L.L.C. is the private corporation which operates and manages the Rolling Plains Detention Center. *See* Dkt. No. 23.

     *B.*    *No* Bivens *remedy exists for McCall's property, medical care, or failure-to-protect claims.*

There is no statutory counterpart to § 1983 for claims by federal prisoners. But in *Bivens*, the United States Supreme Court recognized an implied cause of action for money damages against federal officers for the deprivation of certain constitutional rights. *Id.* at 397. Including *Bivens*, the Supreme Court "has approved of an implied damages remedy under the Constitution itself" only three times—in *Bivens*, 403 U.S. at 397 to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination;" and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Ziglar v. Abbasi*, 582 U.S. 120, 129–31 (2017).

But here again, McCall does not claim the persons involved were federal officials. He claims, correctly, that they were employees of LaSalle Corrections, a private company. And *Bivens* provides a cause of action only against *federal* officials. 403 U.S. at 397; *see also Guerrero-Aguilar v. Ruano*, 118 F. App'x 832, 833 (5th Cir. 2004) (per curiam) ("*Bivens* provides a cause of action against federal agents only in their individual capacities and requires a showing of personal involvement.").

The importance of federal employment was illustrated by the Supreme Court in *Minneci v. Pollard*, 565 U.S. 118 (2012). There, the Supreme Court expressly declined to extend a *Bivens* remedy in the Eighth Amendment context against employees of a privately-operated federal prison where the alleged conduct typically affords the prisoner a state tort law remedy. 565 U.S. at 131. *Minneci* involved a federal prisoner, housed at a facility operated by a private company, who alleged that prison employees deprived him of medical care in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.* at 121.

Importantly, in declining to recognize a *Bivens* remedy against the private employees, the Court noted that the fact of government employment "makes a critical difference." *Id.* at 126. The Court ultimately held that the prisoner could not assert a *Bivens* claim against private prison employees because the alleged conduct typically fell within the scope of state tort law.

This core holding of *Minneci* rests upon the fact that the defendants there were *privately* employed. As the Supreme Court explained, "in the case of a privately employed defendant, state tort law provides an 'alternative, existing process' capable of protecting the constitutional interests at stake," *i.e.*, state tort law. *Id.* at 125 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). But with federally employed defendants, the outcome "differs dramatically" because "[p]risoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government." *Id.* at 126. This is because the Westfall Act "immunizes federal employee[s] through removal and substitution of [the] United States as [the sole] defendant." *Id.* (citing *Osborn v. Haley*, 549 U.S. 225, 238, 241 (2007)). Such

10

a scheme, the Supreme Court observed, would preclude a damages remedy against the offending defendant and mute any possible deterrent effect because the plaintiff's exclusive remedy would be against the United States. *Id.* at 124–26.

Following *Minecci*, the Fifth Circuit has held in several unpublished opinions that employees of private corporations that operate federal prisons are not liable under *Bivens* for Eighth Amendment violations where the conduct at issue falls within the scope of state tort law. *See Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017) (per curiam) (holding that private prison operated by GEO Group, Inc. and its employees "cannot be liable as private actors under *Bivens*."); *Rodriguez v. Giles W. Dalby Corr. Facility*, 552 F. App'x 382, 383 (5th Cir. 2014) ("[B]ecause [defendant] is a private facility, no *Bivens* action is available against either the prison or its employees."); *Eltayib*, 533 F. App'x at 415.

Primarily, McCall's claims are about the defendants' alleged failure to timely replace his eyeglasses. *See* Dkt. Nos. 1 at 4; 14 at 2–8. But the Fifth Circuit has held that the availability of the tort of conversion is an adequate post-deprivation remedy for prisoners who attempt to make constitutional claims based on the loss of their property. *Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994). And under Texas law, a plaintiff may sue for the state-law tort of conversion as a remedy for his property loss. *See id.* And if exigent circumstances threaten irreparable harm in the absence of a faster remedy, state injunctive relief exists. Even accepting as true McCall's allegations that the Rolling Plains staff failed or somehow conspired to deprive him of his eyeglasses, such a claim fails to state a constitutional violation, *see id.* at 543–44, and McCall's remedy, if any, is in state court, not

federal court. *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (citing *Thompson v. Steele*, 709 F.2d 381, 383 (5th Cir. 1983)).

The result is the same for McCall's medical care claim related to his possible exposure to Hepatitis C. Texas law provides that a prisoner alleging an Eighth Amendment violation may bring an action for monetary damages against a prison employee. *Birdo v. Debose*, 819 S.W.2d 212, 215–16 (Tex. App.—Waco 1991). Additionally, under Texas law, a prisoner may pursue a medical malpractice claim against a prison healthcare provider. *Tejeda v. Gernale*, 363 S.W.3d 699, 701 (Tex. App.—Houston [1st Dist.] 2011). McCall's failure-to-protect claim arising out of being assigned to a cell with white supremacists similarly finds a remedy in Texas tort law. As the Supreme Court noted in *Minneci*, Texas law imposes general tort duties of reasonable care on prison employees. *See* 565 U.S. at 129 (citing *Salazar v. Collins*, 255 S.W.3d 191, 198–200 (Tex. App.—Waco 2008)).

The remedies available through *Bivens* and state tort law "need not be perfectly congruent" so long as they "provide roughly similar incentives for potential defendants to comply with the Eighth Amendment" and "roughly similar compensation to victims of violations" *Id.* at 129–30. And because state tort law provides remedies for harms alleged in McCall's claims of property loss, medical care, and failure-to-protect, the Court should dismiss any related and construed *Bivens* claims against the individual defendants as both legally frivolous and for failure to state a claim upon which relief may be granted.

C. *The Court should not expand* Bivens *to cover McCall's claims of retaliation, conspiracy, and due process violations.*

McCall also claims that the individual defendants retaliated against him for calling out racial prejudice on the parts of staff, Dkt. No. 14 at 5, and by falsely charging and convicting him for not cleaning off the top bunk to make room for a new inmate. *Id.* at 5, 7. He also claims that the defendants conspired to deprive him of his eyeglasses. *Id*. He further claims that he did not receive due process during his disciplinary proceedings. *Id*. State tort law arguably fails to provide an effective remedy for these three claims. Thus, they potentially escape the *Minneci* bar, but the undersigned must still determine whether they state a *Bivens* claim.

As explained above, *Bivens* remedies have been limited to specific constitutional violations under the Fourth Amendment, Due Process Clause of the Fifth Amendment, and the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67 (2001); *see also Ziglar*, 582 U.S. at 129–31. In *Ziglar*, the Supreme Court clarified that *Bivens* claims are limited to these three narrow contexts unless a court expands *Bivens* to a new class of claims. 582 U.S. at 131–34.

But expansion of *Bivens* remedies "is now considered a disfavored judicial activity," and courts have consistently refused to extend *Bivens* to any new context or category of defendants. *Butler v. Porter*, 999 F.3d 287, 293 (5th Cir. 2021). The *Ziglar* Court announced a stringent test for when a court may recognize a new *Bivens* context. That two-part test requires courts to consider (1) whether the case "presents a new context" and, if

13

so, (2) whether "there are any special factors that counsel hesitation about [extending *Bivens*]." 582 U.S. at 139–40.

In determining whether a case "presents a new context," the Fifth Circuit has asked "whether the case is different in a meaningful way from previous *Bivens* cases." *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019) (citing *Ziglar*, 582 U.S. at 139). Among other factors, a case can be different in a meaningful way if it involved a different constitutional right, the presence of special factors that previous *Bivens* cases had not considered, or if the level of generality or specificity of the official action differed from previously consid-ered cases. *Id.* at 423 (citing *Ziglar*, 582 U.S. at 139–40).

McCall's retaliation, conspiracy, and due process claims cannot survive this strin-gent test. His claims do not raise an illegal search or seizure (*Bivens*), gender discrimination (*Davis*), or inadequate medical care (*Carlson*). Moreover, the Supreme Court recently, and definitively, determined that "there is no *Bivens* action for First Amendment retaliation." *Egbert v. Boule*, 596 U.S. 482, 498–99 (2022). And his factual allegations fail to support an element of a conspiracy claim, *i.e.*, the existence of an actual violation of § 1983. *See Leggett v. Williams*, 277 F. App'x 498, 501 (5th Cir. 2008).

And while McCall's due process claim arises under the Fifth Amendment's Due Process protections, as did the claims in *Davis*, the Supreme Court declined to extend *Bivens* to Fifth Amendment contexts other than unlawful gender discrimination even be-fore its decision in *Ziglar*. *See Schweiker v. Chilicky*, 487 U.S. 412, 420 (1988) (wrongful denial of Social Security disability benefits); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983) (racial discrimination in military assignments, evaluations, and discipline).

McCall's Fifth Amendment Due Process claim—based on detention center disciplinary proceedings rather than gender discrimination resulting in termination of employment—presents a new context because it differs significantly and meaningfully from the *Bivens* claims in *Davis.*[5]

Lastly, because McCall's due process claim present a new *Bivens* context, the Court must now determine whether there are any factors that should give this Court reason to hesitate before extending *Bivens* to McCall's claim. Here, there are at least two. First, Congress has addressed the issue of constitutional claims by prisoners when it passed the PLRA, 42 U.S.C. § 1997e, and it declined to provide prisoners with a damages remedy against federal jailers. *See Ziglar*, 582 U.S. at 148–49.

A second factor counseling hesitation is the separation of powers doctrine. The Fifth Circuit has recognized that extending *Bivens* to new contexts risks further complicating the already "very complex nature of managing federal prisons." *Butler v. S. Porter*, 999 F.3d 287, 295 (5th Cir. 2021). According to the *Butler* Court, this risk is yet another reason to

---

[5] McCall admits that he received a hearing on the disciplinary charge, and advance notice of the hearing. Dkt. No. 31 at 5. He further admits that after he was convicted, he did not appeal, but blames that failure on the officers not providing him with the "necessary paperwork." *Id.* His punishment for the disciplinary infraction was 30 days of segregation and a loss of 15 days commissary privileges. *Id.* at 6. Finally, he acknowledges that his conviction has not been reversed, invalidated, expunged, or otherwise set aside. *Id.*; *see Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (holding that a plaintiff's civil rights claim for damages that challenges the validity of his criminal conviction or sentence is not cognizable unless the conviction or sentence has been reversed, invalidated, or otherwise set aside); *see also Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (en banc) (applying *Heck* to claims for damages arising from alleged constitutional violations in prison disciplinary proceeding). Lastly, if McCall could somehow overcome the significant hurdles to his due process claims, he has still failed to plausibly allege a viable claim. Even in the pretrial detainee context, a claim that a disciplinary charge was false, standing alone, does not state a due process claim upon which relief may be granted. *See Harris v. Smith*, 482 F. App'x 929, 930 (5th Cir. 2012).

confine *Bivens*. *Id.* Considering these special factors, the Court should decline to extend a *Bivens* cause of action to McCall's due process claim.

For these reasons, the Court should dismiss McCall's retaliation, conspiracy, and due process claims against the individual defendants for failure to state a claim upon which relief may be granted.

### D. *Claims against LaSalle Corrections or Rolling Plains*

Similarly, there is no *Bivens* remedy against LaSalle Corrections or Rolling Plains because a *Bivens* action provides a remedy only for victims of constitutional violations by federal employees in their individual capacities; it does not provide a cause of action against the United States or its contractors. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Moreover, the Supreme Court expressly declined to extend *Bivens* liability to private corporations, like LaSalle Corrections, charged with operating prison facilities. *Malesko*, 534 U.S. at 61.

In *Malesko*, the Supreme Court found no private right of action exists against the private corporation managing a BOP facility, noting that even prisoners housed in BOP run facilities "may not bring a *Bivens* claim against the officer's employer, the United States, or the [Bureau of Prisons]" because such suits are permitted only against federal officers. *Id.* at 72. In sum, "*Bivens* . . . is concerned solely with deterring the unconstitutional acts of individual [federal] officers . . . , and [w]hether it makes sense to impose asymmetrical liability costs on private facilities alone is a question for Congress . . . ." *Id.* at 71; *FDIC v. Meyer*, 510 U.S. 471, 485 (1994). This principle would similarly prevent *Bivens* claims against corporations that contract with the United States to operate detention centers.

16

For these reasons, any *Bivens* claims against LaSalle Corrections or Rolling Plains should be dismissed as legally frivolous and for failure to state a claim upon which relief may be granted.

### IV.    FURTHER LEAVE TO AMEND WOULD BE FUTILE

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion,'" *Stem v. Gomez*, 813 F.3d 205, 215–16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

Here, McCall received an opportunity to amend or supplement his claims through the Court's questionnaire. *See* Dkt. No. 14. His responses failed to cure the defects within his Complaint. At this point, it is unlikely that McCall could successfully replead a plausible claims against the present defendants. For this reason, the undersigned recommends that further leave to amend be denied as futile.

## V. CONCLUSION

For the above reasons, the undersigned RECOMMENDS that the Court:

a. Dismiss McCall's § 1983 and *Bivens* claims against Shaginaw, Bennett, Reynolds, Tucker, and Delarosa in their personal capacities as legally frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1).

b. Dismiss McCall's retaliation, conspiracy, and due process claims against the individual defendants for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1).

c. Dismiss all claims against LaSalle Corrections or Rolling Plains as legally frivolous and for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1).

## VI. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the

18

aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

VII. <u>TRANSFER OF CASE</u>

Having completed the preliminary screening of McCall's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the Senior United States District Judge and designated as Civil Action No. 1:23-CV-00132-C.

ORDERED this 15th day of March, 2024.

 

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE